**Michigan Supreme Court**
**Lansing, Michigan**

# Opinion

Chief Justice:
Clifford W. Taylor

Justices:
Michael F. Cavanagh
Elizabeth A. Weaver
Marilyn Kelly
Maura D. Corrigan
Robert P. Young, Jr.
Stephen J. Markman

FILED JULY 25, 2007

JOEANN BATES,

Plaintiff-Appellee,

v                                                        No. 129564-67

DR. SIDNEY GILBERT,

Defendant-Appellee

and

D & R OPTICAL CORPORATION
d/b/a HEALTH CENTER OPTICAL,

Defendant-Appellant.
_____

JOEANN BATES,

Plaintiff-Appellee/
Cross-Appellant,

v                                                        No. 129569-72

DR. SIDNEY GILBERT,

Defendant-Appellant/
Cross-Appellee,

and

D & R OPTICAL CORPORATION
d/b/a HEALTH CENTER OPTICAL,

     Defendant-Appellee/
     Cross-Appellee.

_____

BEFORE THE ENTIRE BENCH

PER CURIAM.

At issue is whether under MCL 600.2912d(1) plaintiff's counsel could have reasonably believed that plaintiff's proposed expert witness, an ophthalmologist, was qualified to sign an affidavit of merit under MCL 600.2169 offered against defendant, an optometrist. Because we conclude that plaintiff's counsel could not have reasonably believed that an ophthalmologist is qualified to testify against an optometrist, we reverse the judgment of the Court of Appeals and remand this case to the trial court for the entry of a dismissal without prejudice.

## I. FACTS AND PROCEDURAL HISTORY

Plaintiff brought this medical malpractice action against defendants, alleging that defendant Sidney Gilbert, an optometrist and agent of defendant D & R Optical Corporation, failed to perform glaucoma testing, as he should have, when he examined her. Plaintiff filed an affidavit of merit signed by an ophthalmologist. Defendant Gilbert filed an affidavit of meritorious defense signed by himself, claiming that he did perform glaucoma screening on plaintiff when he examined her, and defendant D & R filed a document stating that it was also relying on Gilbert's affidavit.

2

The trial court concluded that plaintiff could have reasonably believed that an ophthalmologist could sign the affidavit of merit and denied defendants' motion for summary disposition. While the trial court recognized that an ophthalmologist "is not an optometrist," it reasoned that had an optometrist signed the affidavit of merit, the optometrist would not have been able to attest to causation and that plaintiff's counsel therefore had a reasonable belief that the ophthalmologist was qualified to sign the affidavit of merit. The trial court also entered a default judgment against both defendants with regard to liability, ruling that Gilbert could not file a self-executed affidavit and that D & R could not file a valid affidavit by merely relying on an affidavit filed by another defendant.

On appeal, the Court of Appeals affirmed the judgment with respect to the sufficiency of plaintiff's affidavit, reversed the judgment with respect to the ruling that Gilbert could not submit a self-executed affidavit, and reversed the default judgment with regard to D & R because, although D & R had not filed an affidavit, the trial court erred in assuming that a default was required. *Bates v Gilbert*, unpublished opinion per curiam of the Court of Appeals, issued August 16, 2005 (Docket Nos. 252022, 252047, 252792, and 252793). The Court of Appeals majority concluded that plaintiff's counsel was faced with a "dearth of case law addressing the applicability of MCL 600.2169(1) to non-physician defendants in general and to optometrists specifically," and that plaintiff's counsel had a reasonable belief that an ophthalmologist could sign the affidavit of merit. *Id.*, slip op at 6. Presiding Judge Donofrio, in dissent, asserted that plaintiff's

3

counsel could not have reasonably believed that plaintiff's affidavit was signed by a qualified expert because "[o]ptometry and ophthalmology are two entirely separate health professions," and thus there was no question that plaintiff's expert had not devoted a majority of his professional time to the practice of the same health profession as that of defendant Gilbert. *Id*., slip op at 2 (Donofrio, P.J., dissenting).

Defendants sought leave to appeal and plaintiff sought leave to cross-appeal. This Court directed the clerk to schedule oral argument on whether to grant the applications or take other peremptory action.[1] 477 Mich 894 (2006).

---

[1] We directed the parties to address

whether the requirements of MCL 600.2912d(1)(a)-(d) are satisfied if: (1) a plaintiff files a single affidavit of merit that is signed by a health professional who plaintiff's counsel reasonably believes is qualified under MCL 600.2169 to address the standard of care, but who is not also qualified to address causation; or (2) a plaintiff files a single affidavit of merit that is signed by a health professional who plaintiff's counsel reasonably believes is qualified under § 2169 to address causation, but who is not also qualified to address the standard of care. The parties shall also address whether § 2912d(1) permits or requires a plaintiff to file multiple affidavits, signed by different health professionals, when a single health professional is not qualified under § 2169 to testify about both the standard of care and causation.

Because we conclude that plaintiff's counsel could not have reasonably believed that an ophthalmologist is qualified to prepare an affidavit of merit regarding the standard of practice or care applicable to an optometrist, and thus failed to meet the first and most elementary statutory requirement, we need not address the remaining questions.

4

## II. STANDARD OF REVIEW

This case involves the interpretation of MCL 600.2912d and MCL 600.2169. Statutory interpretation is an issue of law that is reviewed de novo. *Woodard v Custer*, 476 Mich 545, 557; 719 NW2d 842 (2006). The grant or denial of a motion for summary disposition is also reviewed de novo. *McClements v Ford Motor Co*, 473 Mich 373; 702 NW2d 166 (2005).

## III. ANALYSIS

A medical malpractice claim can be brought against any "licensed health care professional," defined to include "an individual licensed or registered under article 15 of the public health code . . . . " MCL 600.5838a(1)(b); MCL 600.2912(1);[2] *Cox v Flint Bd of Hosp Managers*, 467 Mich 1, 19; 651 NW2d 356 (2002). It is well established that a medical malpractice action may be commenced not only against physicians, but also against nonphysicians who come within the definition of "licensed health care professional," such as nurses, medical technologists, physical therapists, and optometrists. *Cox*, *supra* at 19-20; *Adkins v Annapolis Hosp*, 420 Mich 87, 94-95; 360 NW2d 150 (1984); *McElhaney*

---

[2] MCL 600.2912(1) provides:

> A civil action for malpractice may be maintained against any person professing or holding himself out to be a member of a state licensed profession. The rules of the common law applicable to actions against members of a state licensed profession, for malpractice, are applicable against any person who holds himself out to be a member of a state licensed profession.

*v Harper-Hutzel Hosp*, 269 Mich App 488, 490 n 3; 711 NW2d 795 (2006); *Tobin*

*v Providence Hosp*, 244 Mich App 626, 670-671; 624 NW2d 548 (2001).

MCL 600.2912d(1) provides, in pertinent part:

[T]he plaintiff in an action alleging medical malpractice or, if the plaintiff is represented by an attorney, the plaintiff's attorney shall file with the complaint an affidavit of merit signed by *a* health professional who the plaintiff's attorney *reasonably believes meets the requirements for an expert witness under section 2169.* The affidavit of merit shall certify that the health professional has reviewed the notice and all medical records supplied to him or her by the plaintiff's attorney concerning the allegations contained in the notice and shall contain a statement of each of the following:

(a) The applicable standard of practice or care.

(b) The health professional's opinion that the applicable standard of practice or care was breached by the health professional or health facility receiving the notice.

(c) The actions that should have been taken or omitted by the health professional or health facility in order to have complied with the applicable standard of practice or care.

(d) The manner in which the breach of the standard of practice or care was the proximate cause of the injury alleged in the notice. [Emphasis added.]

MCL 600.2169(1) provides:

In an action alleging medical malpractice, a person *shall not give expert testimony on the appropriate standard of practice or care unless* the person is licensed as a health professional in this state or another state and meets the following criteria:

(a) If the party against whom or on whose behalf the testimony is offered is a specialist, specializes at the time of the occurrence that is the basis for the action in the same specialty as the party against whom or on whose behalf the testimony is offered. However, if the party against whom or on whose behalf the

6

testimony is offered is a specialist who is board certified, the expert witness must be a specialist who is board certified in that specialty.

(b) Subject to subdivision (c), during the year immediately preceding the date of the occurrence that is the basis for the claim or action, devoted a majority of his or her professional time to either or both of the following:

(i) The active clinical practice of the same health profession in which the party against whom or on whose behalf the testimony is offered is licensed and, if that party is a specialist, the active clinical practice of that specialty.

(ii) The instruction of students in an accredited health professional school or accredited residency or clinical research program in the same health profession in which the party against whom or on whose behalf the testimony is offered is licensed and, if that party is a specialist, an accredited health professional school or accredited residency or clinical research program in the same specialty.

(c) If the party against whom or on whose behalf the testimony is offered is a general practitioner, the expert witness, during the year immediately preceding the date of the occurrence that is the basis for the claim or action, devoted a majority of his or her professional time to either or both of the following:

(i) Active clinical practice as a general practitioner.

(ii) Instruction of students in an accredited health professional school or accredited residency or clinical research program in the same health profession in which the party against whom or on whose behalf the testimony is offered is licensed. [Emphasis added.]

Thus, under § 2912d(1) and § 2169(1)(b)(i)-(ii), the plaintiff's counsel must reasonably believe that the expert selected by the plaintiff to address the applicable standard of practice or care in the affidavit of merit devoted a majority of his or her professional time during the year before the alleged malpractice to practicing or teaching the same health profession as the defendant health professional.

7

Although we recognize that at the affidavit-of-merit stage, the plaintiff's counsel may have limited information available to ensure a proper "matching" between the plaintiff's expert and the defendant, and must therefore be allowed considerable leeway in identifying an expert affiant, *Grossman v Brown*, 470 Mich 593, 599; 685 NW2d 198 (2004), such leeway cannot be unbounded. The plaintiff's counsel must invariably have a *reasonable belief* that the expert satisfies the requirements of MCL 600.2169. *Grossman, supra* at 599.

In determining the reasonableness of a counsel's belief that the expert signing the affidavit of merit satisfies the requirements of MCL 600.2169, we examine the information available to the plaintiff's counsel when he or she was preparing the affidavit of merit. *Grossman, supra* at 599-600. In the instant case, it is undisputed that plaintiff's counsel was aware that plaintiff's expert, an ophthalmologist, had not practiced or taught optometry in the year preceding the alleged malpractice. Thus, the issue becomes whether plaintiff's counsel reasonably believed that ophthalmology is the "same health profession" as optometry. "Health profession" is defined in article 15 of the Public Health Code as "a vocation, calling, occupation, or employment performed by an individual acting pursuant to a license or registration issued under this article." MCL 333.16105(2). Optometry and ophthalmology are two differently regulated and licensed health professions, which address different problems. Optometry is defined and regulated by statute. MCL 333.17401-333.17437. MCL 333.17401(1)(b) provides:

8

"Practice of optometry" means 1 or more of the following, but does not include the performance of invasive procedures:

(i) The examination of the human eye to ascertain the presence of defects or abnormal conditions that may be corrected, remedied, or relieved, or the effects of which may be corrected, remedied, or relieved by the use of lenses, prisms, or other mechanical devices.

(ii) The employment of objective or subjective physical means to determine the accommodative or refractive conditions or the range of powers of vision or muscular equilibrium of the human eye.

(iii) The adaptation or the adjustment of the lenses or prisms or the use of therapeutic pharmaceutical agents to correct, remedy, or relieve a defect or abnormal condition or to correct, remedy, or relieve the effect of a defect or abnormal condition of the human eye.

(iv) The examination of the human eye for contact lenses and the fitting or insertion of contact lenses to the human eye.

(v) The employment of objective or subjective means, including diagnostic pharmaceutical agents by an optometrist who meets the requirements of section 17412, for the examination of the human eye for the purpose of ascertaining a departure from the normal, measuring of powers of vision, and adapting lenses for the aid of those powers.

"Ophthalmology," on the other hand, although not specifically defined by statute, has been defined by *Random House Webster's College Dictionary* (1997) as "the branch of medicine dealing with the anatomy, functions, and diseases of the eye."[3] The practice of medicine is defined and regulated by MCL 333.17001-333.17084. "Practice of medicine" means "the diagnosis, treatment, prevention,

_____

[3] "Ophthalmologist" is defined as "a physician specializing in ophthalmology." *Random House Webster's College Dictionary* (1997).

cure, or relieving of a human disease, ailment, defect, complaint, or other physical or mental condition, by attendance, advice, device, diagnostic test, or other means, or offering, undertaking, attempting to do, or holding oneself out as able to do, any of these acts." MCL 333.17001(1)(e). MCL 333.17001(1)(d) defines "physician" as "an individual licensed under this article to engage in the practice of medicine."

Thus, while ophthalmologists are physicians who treat diseases of the eye, optometrists are not physicians and do not generally treat eye diseases or perform invasive procedures, but merely examine the human eye to ascertain defects or abnormal conditions that can be corrected or relieved by the use of lenses.[4] We therefore conclude that ophthalmology is not the "same health profession" as optometry and that plaintiff's counsel could not have reasonably believed that optometry and ophthalmology are identical health professions.

In view of the clear language of the relevant statutes, the caselaw existent at the time plaintiff's attorney filed the affidavit of merit,[5] and the evident distinction

---

[4] In *Williamson v Lee Optical of Oklahoma, Inc*, 348 US 483, 486; 75 S Ct 461; 99 L Ed 563 (1955), the United States Supreme Court held that "[a]n ophthalmologist is a duly licensed physician who specializes in the care of the eyes [while] [a]n optometrist examines eyes for refractive error, recognizes (but does not treat) diseases of the eye, and fills prescriptions for eyeglasses."

[5] See, for example, *Tate v Detroit Receiving Hosp*, 249 Mich App 212, 220; 642 NW2d 346 (2002) (the Court of Appeals held that an expert must match the board certification of the defendant regarding the area of practice at issue); *Decker v Flood*, 248 Mich App 75, 83-84; 638 NW2d 163 (2001) (the Court of Appeals held that the plaintiffs' belief that their expert, an endodontist, was qualified under MCL 600.2169 to offer expert testimony on the standard of care applicable to the defendant, a general practice dentist, was unreasonable because the expert's
(continued…)

between ophthalmology and optometry, we conclude that plaintiff's counsel could not have reasonably believed that an ophthalmologist was qualified under MCL 600.2169 to address the standard of practice or care applicable to an optometrist. Thus, plaintiff's affidavit of merit did not comply with the requirements of MCL 600.2912d(1).

## IV. CONCLUSION

We hold that under the clear language of MCL 600.2912d(1) and MCL 600.2169(1)(b)(i)-(ii), plaintiff's counsel must have reasonably believed that the expert selected by the plaintiff to address the applicable standard of practice or care in the affidavit of merit devoted a majority of his or her professional time during the year before the alleged malpractice to practicing or teaching the same health profession as defendant Gilbert. Given the law at the time plaintiff filed her affidavit of merit, together with the fact that optometry is a distinct health profession from ophthalmology, plaintiff's counsel could not have reasonably believed that plaintiff's expert, an ophthalmologist, was qualified under MCL 600.2169 to address the standard of practice or care applicable to defendant, an optometrist. Because plaintiff's affidavit of merit did not comply with the

_____

(…continued)

qualifications did not match the qualifications of the defendant); *Greathouse v Rhodes*, 242 Mich App 221, 231; 681 NW2d 106 (2000), rev'd in part on other grounds 465 Mich 885 (2001) (the Court of Appeals held that "among other things, § 2169 requires that the expert's practice, teaching, and certification qualifications be precisely 'matched' with those of the defendant. Absent a proper 'match' the expert may not be presented in support of a litigant's case or defense.").

11

requirements of MCL 600.2912d(1), defendants were entitled to a judgment as a matter of law.[6] Accordingly, we reverse the judgment of Court of Appeals and remand this case to the trial court for the entry of a dismissal without prejudice.[7]

Clifford W. Taylor
Elizabeth A. Weaver
Maura D. Corrigan
Robert P. Young, Jr.
Stephen J. Markman

---

[6] We are perplexed by the dissent's criticism that this opinion is "deficient in that it leaves plaintiff unaware with respect to how to successfully continue to prosecute this medical malpractice action." *Post* at 2. All that is necessary on plaintiff's part, as with a party in any other case, is to abide by controlling statutes and controlling caselaw from this Court and the Court of Appeals. We are further perplexed by the dissent's suggestion that "by ignoring the question in the present case and denying leave in *Sturgis* [*Bank & Trust Co v Hillsdale Community Health Ctr*, 268 Mich App 484; 708 NW2d 453 (2005)]", this Court implicitly accepts the reasoning in *Sturgis*. *Post* at 4. "The denial of an application for leave to appeal is ordinarily an act of judicial discretion equivalent to the denial of certiorari. It is held that the denial of the writ of certiorari is not equivalent of an affirmation of the decree sought to be reviewed." *Malooly v York Heating & Ventilating Corp*, 270 Mich 240, 247; 258 NW 622 (1935). Thus, the only implication of this Court's decision to deny leave to appeal in *Sturgis* is that a majority of this Court, including the two dissenting justices in this case, "were not persuaded that the question presented should [then have been] reviewed by this Court." *Sturgis Bank & Trust Co v Hillsdale Community Health Ctr,* 479 Mich ___ (Docket No. 130045, entered July 25, 2007). That is, the Court "expresse[d] no present view with respect to the legal questions dealt with in the opinion of the Court of Appeals." *Frishett v State Farm Mut Automobile Ins Co*, 378 Mich 733, 734 (1966).

[7] In light of our holding in *Kirkaldy v Rim*, 478 Mich ___; ___ NW2d ___ (Docket No. 129128, decided July 11, 2007), that a medical malpractice complaint that is filed with an affidavit of merit that is later determined to be defective nonetheless tolls the period of limitations, the proper remedy is dismissal without prejudice. Plaintiff may use the remainder of the statutory limitations period to file a new complaint, accompanied by an affidavit of merit that conforms to the requirements of MCL 600.2912d(1).

STATE OF MICHIGAN

SUPREME COURT

JOEANN BATES,

        Plaintiff-Appellee,

v                                                                  No. 129564-67

DR. SIDNEY GILBERT,

        Defendant-Appellee,

and

D & R OPTICAL CORPORATION,
d/b/a HEALTH CENTER OPTICAL,

        Defendant-Appellant.
_____

JOEANN BATES,

        Plaintiff-Appellee/
        Cross-Appellant,

v                                                                  No. 129569-72

DR. SIDNEY GILBERT,

        Defendant-Appellant/
        Cross-Appellee,

and

D & R OPTICAL CORPORATION,
d/b/a HEALTH CENTER OPTICAL,

        Defendant-Appellee/
        Cross-Appellee.
_____

CAVANAGH, J. (*concurring in part and dissenting in part*).

While I agree with the majority that plaintiff could not have had a reasonable belief that an ophthalmologist could make a statement in an affidavit of merit regarding the standard of care applicable to the defendant optometrist, I write to comment on the absurdity of not explaining to plaintiff how she *can* meet the requirements set forth in MCL 600.2912d(1). Thus, I dissent on the ground that the majority opinion is deficient in that it leaves plaintiff unaware with respect to how to successfully continue to prosecute this medical malpractice action.

When a plaintiff claims medical malpractice, the plaintiff must file an affidavit of merit that is signed by a health professional who the plaintiff believes meets the requirements set forth in MCL 600.2169(1) and that meets the following additional criteria:

> The affidavit of merit shall certify that the health professional has reviewed the notice and all medical records supplied to him or her by the plaintiff's attorney concerning the allegations contained in the notice and shall contain a statement of each of the following:
>
> (a) The applicable standard of practice or care.
>
> (b) The health professional's opinion that the applicable standard of practice or care was breached by the health professional or health facility receiving the notice.
>
> (c) The actions that should have been taken or omitted by the health professional or health facility in order to have complied with the applicable standard of practice or care.
>
> (d) The manner in which the breach of the standard of practice or care was the proximate cause of the injury alleged in the notice. [MCL 600.2912d(1).]

2

For the reasons the majority states, the proffered ophthalmologist cannot make a statement in an affidavit of merit with respect to the standard of practice or care applicable to the defendant optometrist. Presumably, plaintiff will need to procure an optometrist for this purpose. But the question remains whether an optometrist would be qualified to make a statement in an affidavit of merit regarding proximate cause. If not, the affidavit would fail to satisfy another subsection of the statute, MCL 600.2912d(1)(d).

When this Court entered an order granting oral argument on the applications for leave to appeal, we specifically directed the parties to address the following issues:

> [W]hether the requirements of MCL 600.2912d(1)(a)-(d) are satisfied if: (1) a plaintiff files a single affidavit of merit that is signed by a health professional who plaintiff's counsel reasonably believes is qualified under MCL 600.2169 to address the standard of care, but who is not also qualified to address causation; or (2) a plaintiff files a single affidavit of merit that is signed by a health professional who plaintiff's counsel reasonably believes is qualified under § 2169 to address causation, but who is not also qualified to address the standard of care. The parties shall also address whether § 2912d(1) permits or requires a plaintiff to file multiple affidavits, signed by different health professionals, when a single health professional is not qualified under § 2169 to testify about both the standard of care and causation. [477 Mich 894, 894-895 (2007).]

Through these questions, this Court signaled its awareness of the conundrum that arises in situations such as that presented by this case and that presented in *Sturgis Bank & Trust Co v Hillsdale Community Health Ctr*, 268 Mich App 484; 708 NW2d 453 (2005), oral argument on application for leave to appeal granted 477 Mich 874 (2006). In *Sturgis*, both the alleged negligent

3

employees of the defendant and the affiant were nurses, and it was argued that a nurse cannot testify regarding causation. Today, this Court denies the application for leave to appeal in *Sturgis*, 479 Mich ___ (Docket No. 130045, entered July 25, 2007), while at the same time releasing an incomplete decision in this case that fails to address the question that this Court asked and that the parties devoted their time and energy to answering.

I have no choice but to conclude that by ignoring the question in the present case and denying leave to appeal in *Sturgis*, this Court will permit plaintiff to submit an affidavit of merit, executed by an optometrist, in which the optometrist provides a statement regarding causation similar to the nurse's statement regarding causation in *Sturgis*. Examining the sufficiency of the nurse's statement regarding causation, the Court of Appeals stated, "[T]he issue whether plaintiff's affiants can substantively attest or address matters of causation is not a concern for the purposes of the 'first stage' of the litigation in which an affidavit of merit must be filed under § 2912d(1); rather, the issue can be pursued in later proceedings such as at trial." *Sturgis*, *supra* at 494-495. If this Court does not agree with that reasoning, it had the opportunity to correct it in *Sturgis*, and, more importantly, it had the opportunity to address it in this case, in which the issue was briefed and argued and an opinion issued.

It is normally the case, as the majority points out, that denying an application for leave to appeal is not an affirmation of the reasoning of the lower court. See *ante* at 12 n 6. But under these unique circumstances, in which the

4

question was squarely presented in two cases, and this Court denied leave in one case while declining to answer the question in its opinion in the other case, it must be that whatever statement regarding causation the optometrist can provide satisfies the requirements of MCL 600.2912d(1)(d). Anything else would be grossly unfair, considering that the statutory period of limitations will again begin to run, and if plaintiff files another affidavit that complies with *Sturgis* but is later determined to be insufficient by this Court, she could be deprived of her claim altogether despite her diligence in seeking the assistance of the appellate courts with respect to how to proceed.

Michael F. Cavanagh
Marilyn Kelly