# STATE OF MICHIGAN

# COURT OF APPEALS

VIVIAN TABRON,

Plaintiff-Appellant,

v

LEGACY SINAI HOSPITAL OF GREATER
DETROIT d/b/a SINAI-GRACE HOSPITAL,

Defendant-Appellee.

UNPUBLISHED
September 22, 2015

No. 321368
Wayne Circuit Court
LC No. 12-013496-NH

Before: RONAYNE KRAUSE, P.J., and GLEICHER and STEPHENS, JJ.

PER CURIAM.

In this nursing malpractice action, plaintiff appeals as of right the trial court order granting summary disposition to defendant on a finding that plaintiff failed to prove causation. We affirm.

## I. BACKGROUND

Plaintiff was a 92-year-old woman who went to defendant hospital in January 2011 for a total left knee replacement. Plaintiff received a Foley catheter as part of her surgery procedure. After the surgery and the catheter's removal, plaintiff felt a strong urge to urinate. Plaintiff began to urinate on her bed, herself and the floor. While attempting to get out of bed and go to the bathroom, plaintiff slipped and fell in her urine. Plaintiff suffered five fractured posterior ribs from the fall. Plaintiff filed a complaint alleging that her injuries were caused by defendant's nursing staff's breaches of the standard of care.

## II. STANDARD OF REVIEW

A trial court's decision to grant a motion for summary disposition is reviewed de novo. *Young v Sellers*, 254 Mich App 447, 449; 657 NW2d 555 (2002). "A motion under MCR 2.116(C)(10) tests the factual sufficiency of the complaint." *Maiden v Rozwood*, 461 Mich 109, 120; 597 NW2d 817 (1999). "In evaluating a motion for summary disposition brought under this subsection, a trial court considers affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties, MCR 2.116(G)(5), in the light most favorable to the party opposing the motion." *Id. at 120*. Summary disposition under MCR 2.116(C)(10) is appropriate

-1-

when "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." "A material fact is an ultimate fact issue upon which a jury's verdict must be based." *Belmont v Forest Hills Pub Sch*, 114 Mich App 692, 696; 319 NW2d 386 (1982). A genuine issue of material fact exists "when reasonable minds could differ on an issue after viewing the record in the light most favorable to the nonmoving party." *Allison v AEW Capital Mgt, LLP*, 481 Mich 419, 425; 751 NW2d 8 (2008).

III. ANALYSIS

Plaintiff argues that the trial court erred in granting defendant summary disposition and did not take into account the testimony of plaintiff's expert on the breaches of the standard of care. We disagree.

"In a medical malpractice case, the plaintiff bears the burden of proving: (1) the applicable standard of care, (2) breach of that standard by defendant, (3) injury, and (4) proximate causation between the alleged breach and the injury." *Wischmeyer v Schanz*, 449 Mich 469, 484; 536 NW2d 760 (1995). "Failure to prove any one of these elements is fatal." *Id*. In a medical malpractice case, "[e]xpert testimony is required to establish the standard of care and a breach of that standard, as well as causation." *Kalaj v Khan*, 295 Mich App 420, 429; 820 NW2d 223 (2012) (citations omitted). At issue in this case are the elements of proximate causation and breach of the standard of care. Proximate causation involves both "cause in fact" and "legal cause." *Skinner v Square D Co*, 445 Mich 153, 162–163; 516 NW2d 475 (1994). "Cause in fact" requires a showing that "but for" defendant's action, plaintiff would not have been injured, whereas "legal cause" focuses on foreseeability and whether a defendant should be held legally responsible for such consequences. *Id*. "A plaintiff must adequately establish cause in fact in order for legal cause or 'proximate cause' to become a relevant issue." *Id*. "[A] plaintiff's prima facie case of medical malpractice must draw a causal connection between the defendant's breach of the applicable standard of care and the plaintiff's injuries." *Craig v Oakwoood Hosp*, 471 Mich 67, 90; 684 NW2d 296 (2004). It is not sufficient for plaintiff to proffer "a causation theory that, while factually supported, is, at best, just as possible as another theory." *Skinner*, 445 Mich at 164.

While the trial court did not make a finding as to whether it was cause in fact or legal cause that was lacking from plaintiff's case, "[a] plaintiff must adequately establish cause in fact in order for legal cause or 'proximate cause' to become a relevant issue." *Skinner*, 445 Mich at 162–163. The proofs presented by plaintiff would not permit a reasonable jury to conclude that omissions by defendant's nursing staff factually caused plaintiff to urinate on herself and then slip in her own urine. Plaintiff's proofs consisted of the complaint, depositions from herself, her daughter Jo Ellen Tabron, and Kathryn Rudd, R.N., along with Rudd's affidavit of merit.

Rudd was offered as plaintiff's expert witness on the nursing standard of care. Rudd testified that the nursing standard of care was violated in three ways where defendant's nursing staff: 1) did not properly score plaintiff for her risk of falling; 2) did not properly monitor plaintiff for urgency and frequency of urination; and 3) did not respond promptly to plaintiff's call for help.

While there is testimony that the nursing staff improperly scored plaintiff for her level of fall risk, there is no evidence upon which the trier of fact could conclude that that assessment was a factual or proximate cause of plaintiff's fall. Rudd testified that plaintiff's Schmid score was a three instead of a four for three days out of her month long hospital stay, but she also admitted that the nursing staff took the required fall risk precautions: the room was posted for fall risk, the bed was in the lowest possible position, the call light was within reach, and plaintiff was instructed on its use. Plaintiff was wearing nonskid footies and there was no evidence of room clutter or any other breach of fall risk protocol. The court did not err in dismissing this theory.

Plaintiff's other theories fail for lack of proof on breaches of the standard of care. Rudd testified that in order to follow the standard of care for nurses, after removal of the catheter, nursing staff should have monitored plaintiff and asked her about her need to urinate "every 15 minutes to every half hour or every hour." Plaintiff's testimony was that when the catheter was removed the nursing staff left the room and almost immediately, she began to void. Once she realized she was soiled, plaintiff rose, attempted to stand, and fell. There was no competent evidence presented from which one could adduce that the nursing staff violated the standard of care by failing to monitor plaintiff every 15, 30, or 60 minutes.

The evidence also does not support that nursing staff violated the standard of care by not responding promptly to plaintiff's call for help. Plaintiff testified that she did not use the call light. Rudd could not testify with certainty that plaintiff used her call light to call for help. Instead, Rudd relied on the deposition testimony of plaintiff's daughter that the call light was used. That reliance is insufficient in the face of plaintiff's own testimony that she did not use the call light, because at that time of her accident she found it unnecessary. The testimony of plaintiff's daughter does not create a disputed issue of fact in regards to whether plaintiff used her call light or not.

The record does not reveal that an act or omission by defendant proximately caused plaintiff to either urinate on herself or slip in her own urine due to being unattended or not monitored. Failure to prove any one element in a medical malpractice claim is fatal to the claim. *Wischmeyer*, 449 Mich at 484.

Affirmed.

/s/ Amy Ronayne Krause
/s/ Elizabeth L. Gleicher
/s/ Cynthia Diane Stephens

-3-