*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

TRAVIS STRASSER,

Plaintiff-Appellee,

v

OAKWOOD HERITAGE HOSPITAL, OAKWOOD
HEALTHCARE INC., BEAUMONT HOSPITAL-
TAYLOR, BEAUMONT HEALTH, and
BEAUMONT HEALTH SYSTEM,

Defendants,

and

GOKUL RAGHUNATH TOSHNIWAL, M.D., and
ANESTHESIA ASSOCIATES OF ANN ARBOR
PLLC,

Defendants-Appellants.

UNPUBLISHED
November 4, 2021

No. 355496
Wayne Circuit Court
LC No. 18-014954-NH

Before: MARKEY, P.J., and BECKERING and BOONSTRA, JJ.

BECKERING, J., (*dissenting*).

In this medical malpractice action, defendants Gokul Toshniwal, M.D. and Anesthesia Associates of Ann Arbor PLLC ask this Court to overturn the trial court's order denying their motion to strike plaintiff Travis Strasser's expert witness. Defendant Dr. Toshniwal is board certified in anesthesiology as well as the subspecialty of pain medicine. Likewise, plaintiff's expert, Robert Savala, M.D., is board certified in anesthesiology as well as the subspecialty of pain medicine. The parties debate which of those two specialties Dr. Toshniwal was performing at the time of the alleged malpractice for purposes of assessing whether Dr. Savala meets the requirements of MCL 600.2169(1). Under the presenting facts, I would conclude that the trial court did not abuse its discretion in denying defendants' motion. Thus, I respectfully dissent.

-1-

This Court reviews for an abuse of discretion a trial court's decision regarding whether an expert witness is qualified. *Tate v Detroit Receiving Hosp*, 249 Mich App 212, 215; 642 NW2d 346 (2002). "The abuse of discretion standard recognizes that there may be no single correct outcome in certain situations; instead, there may be more than one reasonable and principled outcome." *Gonzales v St. John Hosp & Med Ctr*, 275 Mich App 290, 294; 739 NW2d 392 (2007). Moreover, "[w]hen the trial court selects one of these principled outcomes, it has not abused its discretion, and the reviewing court should defer to the trial court's judgment." *Id*. Also, a trial court's decision regarding a motion to strike is discretionary. *Kalaj v Khan*, 295 Mich App 420, 425; 820 NW2d 223 (2012). The relevant standard of care in a medical malpractice action is a question of law that this Court reviews de novo. *Cox v Board of Hosp Managers for Flint*, 467 Mich 1, 16 n 16; 651 NW2d 356 (2002). To the extent that the resolution of this appeal requires interpretation of MCL 600.2169, questions of statutory interpretation are also reviewed de novo. *Id*. at 16.

> To establish a cause of action for medical malpractice, a plaintiff must establish four elements: (1) the appropriate standard of care governing the defendant's conduct at the time of the purported negligence[1], (2) that the defendant breached that standard of care, (3) that the plaintiff was injured, and (4) that the plaintiff's injuries were the proximate result of the defendant's breach of the applicable standard of care. [*Kalaj*, 295 Mich App at 429.]

"Expert testimony is required to establish the standard of care and a breach of that standard, as well as causation." *Id*. (citations omitted). The party offering the expert must show that the witness is knowledgeable regarding the applicable standard of care. *Decker v Rochowiak*, 287 Mich App 666, 685; 791 NW2d 507 (2010).

MCL 600.2169(1) establishes the requirements for a standard of care expert in a medical malpractice action, and provides in pertinent part:

> (1) In an action alleging medical malpractice, a person shall not give expert testimony on the appropriate standard of practice or care unless the person is licensed as a health professional in this state or another state and meets the following criteria:
>
> (a) If the party against whom or on whose behalf the testimony is offered is a specialist, specializes at the time of the occurrence that is the basis for the action in the same specialty as the party against whom or on whose behalf the testimony is offered. However, if the party against whom or on whose behalf the testimony is offered is a specialist who is board certified, the expert witness must be a specialist who is board certified in that specialty.

---

[1] Plaintiff alleges that Dr. Toshniwal performed a medical procedure without his consent. "The doctrine of informed consent requires a physician to warn a patient of the risks and consequences of a medical procedure." *Wlosinski v Cohn*, 269 Mich App 303, 308; 713 NW2d 16 (2005).

(b) Subject to subdivision (c), during the year immediately preceding the date of the occurrence that is the basis for the claim or action, devoted a majority of his or her professional time to either or both of the following:

(*i*) The active clinical practice of the same health profession in which the party against whom or on whose behalf the testimony is offered is licensed and, if that party is a specialist, the active clinical practice of that specialty.

(*ii*) The instruction of students in an accredited health professional school or accredited residency or clinical research program in the same health profession in which the party against whom or on whose behalf the testimony is offered is licensed and, if that party is a specialist, an accredited health professional school or accredited residency or clinical research program in the same specialty.

In *Woodard v Custer*, 476 Mich 545, 560; 719 NW2d 842 (2006), the Supreme Court concluded that MCL 600.2169(1)(a) requires a plaintiff's expert to specialize in the defendant's relevant specialty. "That is, if a defendant physician is a specialist, the plaintiff's expert witness must have specialized in the same specialty." *Id*. at 560-561. "If a defendant physician specializes in a subspecialty[2], the plaintiff's expert witness must have specialized in the same subspecialty as the defendant physician at the time of the occurrence that is the basis for the action." *Id*. at 562.

Here, there is no dispute that Drs. Toshniwal and Savala have the same two specialties. At the time of the incident at issue, they were each board certified by the American Board of Anesthesiology in the specialty of anesthesiology as well as the subspecialty of pain medicine. Thus, MCL 600.2169(1)(a) is clearly met, regardless of which of these specialties Dr. Toshniwal was practicing at the time of the alleged malpractice.[3]

With respect to MCL 600.2169(1)(b), the *Woodard Court* explained that

[I]n order to be qualified to testify under [MCL 600.2169(1)(b)], the plaintiff's expert witness must have devoted a majority of his professional time during the year immediately preceding the date on which the alleged malpractice occurred to practicing or teaching the specialty that the defendant physician was practicing at the time of the alleged malpractice, i.e., the one most relevant specialty. [*Id*. at 566 (footnote omitted.)]

---

[2] The *Woodard* court determined that a specialty, for purposes of MCL 600.2169(1)(a), is a particular branch of medicine or surgery in which one can potentially become board certified, and that includes subspecialties. *Id*. at 561-562.

[3] Even though Dr. Savala is board certified in both specialties, a plaintiff's expert's specialties need not match all of the defendant physician's specialties, just the one that the defendant was practicing at the time of the alleged malpractice. *Id*. at 567-68.

Dr. Savala testified at his deposition that in the year preceding the date of the alleged malpractice, he spent nearly all of his time in pain medicine.[4] Dr. Toshniwal testified that he spent roughly 30 to 40 percent of his time in pain medicine and 60 to 70 percent in anesthesiology. The parties dispute which specialty Dr. Toshniwal was practicing at the time of the alleged malpractice. According to defendants, if it was anesthesiology, Dr. Savala would not be qualified under MCL 600.2169(1)(b), but if it was pain medicine, he would be.

In this case, plaintiff had just undergone knee surgery, which was performed under general anesthesia. After the operation, the opioids given to plaintiff were not effectively managing his pain. Dr. Toshniwal testified that he discussed with plaintiff, his significant other, and the surgeon various alternatives to help plaintiff manage the pain, and then performed an adductor canal block procedure, which is an analgesic sensory nerve block injected into the adductor canal of the thigh.[5] Plaintiff does not claim that Dr. Toshniwal performed the procedure improperly. Rather, he claims that Dr. Toshniwal should not have performed the procedure at all. He alleges in his complaint that he "clearly and specifically informed all Defendants that he did **not** want any spinal or regional blocks for post-operative pain control."[6] He feared the potential side effects experienced by one of his friends. After Dr. Toshniwal performed the procedure, plaintiff experienced severe left femoral neuropathy, resulting in this lawsuit alleging a lack of informed consent.[7]

Defendants claim that because Dr. Toshniwal performed the nerve block during the perioperative period in order to treat acute pain, it falls under the domain of anesthesiology. Pain medicine, according to defendants, focuses on acute chronic pain, not acute perioperative pain. In contrast, plaintiff argues that the treatment at issue involved a pain management procedure; it did not entail the use of anesthesia, so it falls under the umbrella of pain medicine, not anesthesiology. Moreover, plaintiff points out that the case involves a dispute over informed consent, not the performance of the procedure itself, so under either specialty, the standard of care is the same.

At the motion hearing, the trial court ruled, in relevant part:

> I think it, it was a pain management procedure, the, the nerve block. [B]ased on the evidence, the documents that both sides presented, and then *Woodard v*

---

[4] Dr. Savala testified that he spends the majority of his time managing acute and chronic pain, both in an office and in a hospital outpatient surgery center, and he regularly performs nerve blocks 15 to 20 times per week. He agreed that nerve blocks are a pain control procedure.

[5] Whether Dr. Toshniwal properly obtained informed consent for the procedure is a disputed question of fact that is not before this Court.

[6] Plaintiff's medical records indicate that plaintiff "refused spinal or any regional block for post-op pain control."

[7] Plaintiff alleged in his complaint that he "has no active motor activities in the left leg, atrophy, pain, decreased sensation distribution, and numerous other problems." Whether plaintiff suffered injury due to the procedure is a disputed question of fact that is not before this Court.

*Custer* [476 Mich 545; 719 NW2d 842 (2006)] says that it's the relevant specialty that was being performed. And it is pain management.

But this seems, to me, and maybe I just got lost in my head, it seems to be much ado about nothing, because, Plaintiff, I don't think, is alleging that the pain, pain management was done wrong.

Or that the nerve block was done incorrectly.

But it was done without consent.

In my view, the trial court did not abuse its discretion in denying defendants' motion. See *Gonzales*, 275 Mich App at 294. First, the trial court's conclusion that Dr. Toshniwal was practicing pain medicine at the time he performed the nerve block is reasonable. Dr. Toshniwal was treating plaintiff's pain. Second, the materials before this Court illustrate that the specialties of anesthesiology and pain medicine, when it comes to pain treatment, appear to greatly overlap. Essentially, defendants are asking this Court to split hairs where Dr. Savala's credentials exactly match those of Dr. Toshniwal, and Dr. Savala's practice includes the regular performance of nerve blocks.[8] Given that Dr. Toshniwal testified that he was considering which of various pain medications to administer to alleviate plaintiff's pain, that supports a finding that he was practicing pain medicine. The parties debate whether a nerve block given after surgery can credibly be argued to fall under the sole umbrella of anesthesiology, as a nerve block does not include general anesthesia, and its focus is on pain management, not sedation. Plaintiff points out that the medical records and billing records distinguish between general anesthesia and pain management, referring to post-operative pain control as a separate item. Defendants state that is irrelevant, where the procedures are not the same, and thus, are not billed the same, but the fact that they are different does not make one pain medicine and the other not. Weighing against the argument that the most relevant specialty is anesthesiology is the fact that defendants themselves formally relied on a pain medicine doctor's affidavit of meritorious defense at the outset of this case.[9]

---

[8] While Dr. Savala testified that he routinely performs a different type of nerve block and he had not performed the type of nerve block at issue in several years, that this fact goes to the weight and credibility of his testimony, not its admissibility. See *Ykimoff v Foote Mem Hosp*, 285 Mich App 80, 101; 776 NW2d 114 (2009) ("Gaps or weaknesses in the witness' expertise are a fit subject for cross-examination, and go to the weight of his testimony, not its admissibility") (quotation marks and citation omitted). Again, this case is about informed consent, not the way he performed the particular nerve block.

[9] Codefendants Oakwood Heritage Hospital, Beaumont Hospital-Taylor, Oakwood Healthcare, Inc., and Beaumont Health System submitted an affidavit of meritorious defense from Nabil Sibai, M.D., a physician who is board certified in both anesthesiology and the subspecialty of pain medicine and who, like Dr. Savala, devoted the majority of his professional time in the year preceding the subject incident in the active clinical practice of the medical subspecialty of pain medicine. His affidavit indicated that "[t]he applicable standard of care is what a board-certified

Based on the record evidence, the question of "which hat" Dr. Toshniwal was wearing when tasked with obtaining informed consent for the performance of a nerve block to manage plaintiff's pain after surgery could reasonably be answered either way. Both anesthesiologists and pain medicine physicians perform nerve blocks to treat pain. And because there is no dispute that the standard of care with respect to obtaining informed consent is the same under either specialty, the splitting of hairs in this case makes no sense, other than for purposes of legal strategy. Because Dr. Toshniwal was undertaking to treat plaintiff's pain, and because Dr. Savala possess the exact same board certifications as Dr. Toshniwal, I do not believe the trial court abused its discretion by denying defendants' motion. See *Tate*, 249 Mich App at 215; *Gonzales*, 275 Mich App at 294. As such, I would affirm.

/s/ Jane M. Beckering

---

anesthesiologist with a subspecialty in pain medicine of ordinary learning, judgment, or skill would or would not do under the same or similar circumstances then and there existing." In addition to filing his own affidavit, Dr. Toshniwal filed a pleading formally relying on Dr. Sibai's affidavit of meritorious defense.